(No. 62361.—

THEODORE R. HELLER, Appellee, v. JONATHAN IN-VESTMENTS, INC., *et al.*, Appellants.

*Opinion filed June 20, 1986.*

Kim R. Denkewalter, of Denkewalter & Associates, Ltd., of Northfield (David A. Novoselsky, of Chicago, of counsel), for appellants.

Bloch & Bloch, Ltd., of Chicago (Sidney Z. Karasik, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Theodore Heller, filed this action against Jonathan Investments, Inc. (Jonathan), Reynolds Realty, and Gerri-Sue Livers (defendants) seeking a rescission of two deeds transferring property from plaintiff to Jonathan; a declaration that the property had been operated as a constructive trust in favor of plaintiff; and an accounting to plaintiff as to income generated by the property whilst operated by defendants. Jonathan's accountant and several banks were also named as defendants in the complaint in counts which asked for temporary relief preventing the transfer of certain of defendants' assets. These latter counts, however, are not at issue in this appeal.

The suit proceeded to a trial in the circuit court of

Cook County. Since plaintiff's claims involved equitable relief, the cause was heard before the court alone. At the close of plaintiff's case in chief defendants moved for judgment, which the court granted. Plaintiff appealed, and a majority of the appellate court reversed, holding that (1) the trial court had applied an improper standard of proof in deciding defendants' motion for judgment, (2) plaintiff's evidence was sufficient to withstand the motion, and (3) the trial court had improperly excluded certain evidence. (135 Ill. App. 3d 350, 356-59.) This court granted defendant's petition for leave to appeal.

Defendants raise two issues for review: (1) Did the appellate court improperly decide an issue which was not raised by the parties on appeal? and (2) Did the trial court properly grant defendants' motion for judgment? Plaintiff, on the other hand, urges us to find the allegedly erroneous exclusion of evidence to be independent grounds for granting a new trial.

The two properties in question were originally owned by plaintiff's father, who died in 1973. Upon his death the property was placed in the Adeline Heller Trust, a trust for the benefit of plaintiff's mentally incompetent mother. Plaintiff was named trustee and operated the properties on behalf of the trust. He succeeded to the ownership of the properties upon his mother's death in December of 1977.

Although plaintiff had had no prior experience with real estate management, he began managing the two properties upon his father's death. His duties included collecting rents, negotiating leases, arranging for maintenance, and paying expenses. In 1975 he began having problems with city building inspectors who cited one of his buildings for numerous building-code violations. He increasingly turned for advice to a personal acquaintance, John Reynolds, who at the time was in the business of selling real estate. According to plaintiff he be-

gan entrusting decisions to Reynolds and changed his attorney and accountant on Reynolds' advice.

In October 1976 plaintiff was struck by a taxicab and suffered a serious leg injury. He eventually had surgery on his leg in December of 1977, and for a substantial period was unable to work at his normal job with the city of Chicago. During this period, plaintiff testified, he had a number of other personal problems. His son was having trouble at school, his mother's "hollering" would keep him awake at night, and his financial situation was critical due to alimony payments and skyrocketing expenses on the property he managed. Plaintiff testified that he was "virtually disoriented" from 1977 onward.

Beginning in November of 1977 plaintiff testified that he entrusted the "management" of the property to Reynolds. While he claimed that he did not negotiate leases or consult attorneys regarding the property, he stated that he continued to be involved in the "operation" of the property, which included collecting rents, "watching over" the property, and making minor repairs and emergency purchases.

Plaintiff also testified that in December of 1978 he signed deeds transferring each of the two properties to Jonathan. Reynolds was both president of Jonathan and the sole shareholder. Plaintiff stated that he signed the deeds at the county recorder's office just before they were recorded. He claimed that he did not voluntarily sign the deeds but instead did so because he was in fear of his life. Since Reynolds died before the suit was filed, the Dead Man's Act (Ill. Rev. Stat. 1983, ch. 110, par. 8–201) prevented plaintiff from testifying directly as to Reynolds' statements and actions which led to plaintiff's fear.

Plaintiff also claimed that there was no consideration for the transfer. He testified that Jonathan had paid for thousands of dollars due on his credit card bills; however, he claimed these payments were for Reynolds' per-

sonal expenses which plaintiff had charged to his credit cards. He also testified that he received a $25,000 check from Jonathan in December 1979, but claimed that he kept only half of the proceeds of the check and delivered $12,500 in cash to Reynolds. He explained that the $12,500 he received himself was because he was in a desperate financial condition at the time, but inexplicably claimed that the money was neither a loan nor a payment. He also admitted he had received numerous smaller checks from Jonathan, but claimed that none of these checks represented consideration for the property deeded to Jonathan.

Plaintiff also claimed that neither he nor the Adeline Heller Trust had ever borrowed money from John Reynolds, Jonathan Investments, or Reynolds Realty. On cross-examination, however, he admitted that on December 8, 1978, two days after deeding the properties in question to Jonathan, he signed a check, as trustee, paying $7,824.26 to Reynolds. The check bore the notation "ACCRUED INTEREST TO DATE ON LOANS." The check stub for the check bore the notation "MERGED INTEREST ON MERGED NOTES, 1972 THRU 1975-1976-1977 THRU & INCLUD. 12/8/78 TOTAL $60,000 ACCRUED." Moreover, he admitted that the trust's 1978 ledger listed the $7,824.26 payment as "INTEREST ON LOANS FROM J. REYNOLDS." He also admitted that there were no payments to Reynolds listed as loan repayment subsequent to the transfer of the two properties.

Plaintiff also presented the testimony of defendant Gerri-Sue Livers, called as an adverse witness. Livers was Reynolds' daughter and had inherited all of the stock of Jonathan Investments. She had previously been listed as corporate secretary for Jonathan, although she testified that she had no actual involvement in Jonathan prior to her father's death. She testified that she had examined Jonathan's books and could find no record of

Jonathan extending loans to anyone. She testified that to her knowledge Reynolds had not personally loaned anyone more than $1,000.

Adam Bourgeois, attorney for a tenant in one of the properties in question, testified that he approached plaintiff in May 1978 in order to negotiate a new lease. Plaintiff told him to discuss the matter with Reynolds. He then negotiated the lease with Reynolds.

Milton Tornheim, an attorney who had at various times represented both plaintiff and Reynolds, also testified for plaintiff. The trial court refused to allow Tornheim to testify to details of a property transaction between plaintiff and Reynolds in May of 1979, subsequent to the transaction at issue in this case. Plaintiff's counsel argued that the transaction was relevant to show the continuing nature of the relationship between plaintiff and Reynolds. As an offer of proof Tornheim, who was already on the witness stand, was examined by plaintiff's counsel. He testified that in May of 1979 Reynolds had an appraisal done of certain property in the estate of plaintiff's mother. This property, not the property at issue in the case at bar, was appraised at $9,500. Tornheim submitted the appraisal to the probate court along with a contract approved by plaintiff, as administrator of the estate, selling the property to Reynolds for $20,000. Subsequently, a guardian *ad litem* for minor heirs to the estate submitted affidavits showing that adjacent vacant lots had sold for more than $30,000, and submitted a second appraisal valuing the property at $60,000. The probate court disallowed the sale to Reynolds, and later approved a contract selling the property to another purchaser for $64,000.

After concluding the offer of proof, plaintiff's counsel continued direct examination of Tornheim. Tornheim testified that during the two years before the execution of the deeds in question he had observed plaintiff and Rey-

nolds together on several occasions. He testified that Reynolds treated plaintiff as an incompetent.

Plaintiff also presented the testimony of Beverly Kuhnen, Reynolds' one-time girlfriend and bookkeeper. The trial court refused to allow Kuhnen to testify to Reynolds' actions and statements regarding plaintiff, ruling that this testimony was inadmissible hearsay. As with Tornheim, plaintiff's counsel examined Kuhnen as an offer of proof. Kuhnen testified that shortly after the transfer of plaintiff's property Reynolds told her he "had to get pretty violent" with plaintiff in order to get him to sign some papers at the county recorder's office. She also testified that Reynolds treated plaintiff as "subservient," that there was "a great deal of yelling, downright shouting and screaming and cursing" whenever Reynolds and plaintiff were together, and that "[a]t times it got very violent." For example, on one occasion when Reynolds was riding with plaintiff and was disturbed by plaintiff's manner of driving Kuhnen saw Reynolds hit plaintiff's arm "to a point where it was black and blue." She also testified to an instance where "[Reynolds] had [plaintiff] literally by the throat and had pounded his head into the wall to a point where the wall board had broken loose." On other occasions she saw Reynolds hit plaintiff and throw things at him.

After Kuhnen's testimony plaintiff rested his case. Defendant moved for judgment pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110). The court, referring to the standard set out in *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, described his treatment of the motion as follows:

> "The Court must first establish and satisfy itself that the elements of the cause have been proved and that the Plaintiff's testimony and evidence establishes a prima facie case. If the Court finds that no prima facie case has been established, then it must direct a finding without de-

lay. If the Court finds that the evidence presented by the Plaintiff establishes a prima facie case, then the Court is placed to the weighing of the evidence task to ascertain whether negative weights placed on certain testimony might cause the prima facie case to fail. That's the task that I'm about to undertake."

Upon reviewing the evidence presented the court stated:

"Plaintiff's evidence is not of the quality which is required to set aside the deed. It is not clear. It is not convincing. It is not of the character that equity needs in order to take the drastic step of rescinding such an instrument.

\* \* \*

\*\*\* The evidence here is not clear and convincing that Heller was under any sort of duress at the time that he executed these two deeds. The evidence does not establish a fiduciary relationship between Heller and Reynolds prior to the date of the deeds. The evidence is barren as to why this Court should excuse the delay in bringing this action until immediately after the death of Reynolds which death has silenced one of the principals. Unexplained delay which operates to the detriment of the other party is called laches. Plaintiff Heller here is guilty to my view of laches which bars the relief that he seeks.

If the Plaintiff is to prevail and secure a declaration of a construction [*sic*] trust here and secure an order rescinding these deeds, he must do so on the weight and persuasion of his own testimony. He has filed [*sic*] to meet the quality of proof required for such relief. For this reason, the Defendant's motion at the close of the plaintiff's case is granted. Judgment is entered for the Defendant and against the Plaintiff."

The majority in the appellate court held that the trial court misinterpreted the standard of proof necessary for granting a judgment under section 2—1110. The appellate majority also held that under the proper standard plaintiff's evidence was sufficient to withstand a motion for judgment.

Defendant claims that the question of the proper

standard under section 2—1110 was not raised by plaintiff in the appellate court, and thus should have been deemed waived. We do not find it necessary in this instance to decide whether plaintiff's appellate briefs adequately raised the issue because we believe that the trial court did in fact apply the proper standard. When the defendant in a nonjury case moves for judgment at the close of plaintiff's case in chief section 2—1110 directs that "[i]n ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110.) This section is a verbatim recodification of section 64(3) of the old Civil Practice Act (see Ill. Rev. Stat. 1977, ch. 110, par. 64(3)), which was construed by this court in *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151. The *Kokinis* court held that the trial court must first determine whether the plaintiff has made out a *prima facie* case, *i.e.*, whether plaintiff has presented at least some evidence on every element necessary to establish the underlying cause of action. (81 Ill. 2d 151, 154-55.) If plaintiff has not made out a *prima facie* case then defendant is entitled to judgment as a matter of law. (81 Ill. 2d 151, 154-55.) However, if plaintiff *has* made out a *prima facie* case the court must still weigh the quality of the evidence as a finder of fact. 81 Ill. 2d 151, 155.

The *Kokinis* court was not called upon to determine the effect that differing burdens of proof would have on the section 2—1110 weighing process. However, it is apparent that a plaintiff's evidence, in the usual case, must be at least sufficient to prove the plaintiff's case by a preponderance of the evidence. Moreover, when the underlying cause of action requires the plaintiff to establish its case by clear and convincing evidence then plaintiff's evidence must meet this higher burden of proof to avoid entry of a judgment under section 2—1110. If, af-

ter weighing the quality of the evidence, the trial court finds that the plaintiff's evidence is insufficient to satisfy the required burden of proof, then the defendant's motion for judgment should be granted.

In the case at bar plaintiff was attempting to set aside two deeds, claiming the deeds were executed due to duress and/or undue influence. In order to set aside a deed for these reasons the grounds must be established by clear and convincing evidence. (*Chicago Land Clearance Com. v. Yablong* (1960), 20 Ill. 2d 204, 207; *Klass v. Hallas* (1959), 16 Ill. 2d 161, 165; *Johnson v. Fulkerson* (1957), 12 Ill. 2d 69, 75.) The trial court repeatedly stated that it did not find plaintiff's evidence of duress and undue influence to be clear and convincing. It is apparent from these remarks that the court was in fact applying the proper burden of proof in deciding the motion for entry of a judgment at the close of the plaintiff's case. The appellate court thus erred in finding that the trial court applied an improper standard.

The appellate court also ruled that parts of the testimony of Milton Tornheim and Beverly Kuhnen were improperly excluded under the Dead Man's Act. We need not express an opinion on the proper application of the Dead Man's Act because the record does not establish that the Dead Man's Act was the reason for the exclusion of any part of Tornheim's or Kuhnen's testimony. In addition, we find no error in the exclusion of Tornheim's testimony regarding the attempted transfer of property from Adeline Heller's estate to Reynolds. The trial court correctly found that the attempted transfer of property in May 1979 had no relevance to the issue of whether duress or undue influence had been present several months earlier when the properties here in issue were transferred.

However, we agree with plaintiff that it was error to exclude, on hearsay grounds, Kuhnen's testimony as to

Reynolds' violence toward plaintiff. This testimony was not hearsay since Kuhnen testified that she personally witnessed the violent acts. Violent acts toward plaintiff occurring shortly before the conveyances in question would be relevant to explain plaintiff's state of mind at the time of the conveyances, and violent acts occurring after the conveyances would be relevant to explain plaintiff's delay in filing suit. That portion of Kuhnen's testimony which related to these time frames should have been admitted.

Moreover, Kuhnen's testimony as to Reynolds' statements should have been admitted under the party-admission exception to the rule against hearsay. Since Reynolds was both Jonathan's president and its sole shareholder his statements regarding the conveyance of the property in question must be deemed to be party admissions as to Jonathan. See *Baer's Express & Storage Co. v. Industrial Board* (1917), 282 Ill. 44, 48; *Chicago Burlington & Quincy R.R. Co. v. Coleman* (1857), 18 Ill. 298, 299; *Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 181.

However, we do not believe that the exclusion of this evidence is grounds for granting plaintiff a new trial. In order to set aside a deed on the basis of duress or undue influence the duress or undue influence must be shown to have existed at the time the deed was executed. (*Klass v. Hallas* (1959), 16 Ill. 2d 161, 164; *Pepe v. Caputo* (1951), 408 Ill. 321, 327; *Decker v. Decker* (1927), 324 Ill. 457, 475.) Even with Kuhnen's testimony plaintiff's evidence falls far short of proving, by clear and convincing evidence, the existence of duress or undue influence at the time of the conveyances. Plaintiff testified that events in 1976 and 1977 caused him to be "disoriented" from 1977 onward, but there was no evidence that the events which allegedly caused him to be disoriented continued beyond 1977. Moreover, while plaintiff

claimed that he relied totally on Reynolds to manage the property in question, the evidence is undisputed that it was plaintiff, not Reynolds, who collected the rents, watched over the premises, and made repairs. The mere fact that Reynolds assisted plaintiff in managing the property is insufficient to establish the fiduciary relationship necessary for a claim of undue influence.

Similarly, plaintiff's evidence of duress is far from clear and convincing. Although plaintiff claimed that he feared that Reynolds would physically harm him, and continued to so fear until Reynolds' death, the evidence was clear that for at least the last two years of his life Reynolds was virtually infirm. Moreover plaintiff, who claimed that he feared Reynolds, nonetheless continued to have daily contact with him, ran errands for him, offered him rides, and did shopping for him. The trial court, in noting this evidence, expressed serious doubts as to plaintiff's credibility, and a reviewing court must give great weight to this evaluation of credibility. Finally, while plaintiff claimed there was no consideration for the deeds there was nonetheless evidence of substantial amounts of money flowing from Reynolds and Jonathan to plaintiff.

In summary, the appellate court erred in finding that the trial court applied an improper burden of proof to defendants' motion for judgment. We hold that the trial court in fact applied a proper standard. We also hold that even including the improperly excluded portions of Beverly Kuhnen's testimony plaintiff's evidence is not sufficiently clear and convincing to warrant setting aside the two deeds in question. Therefore, the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*