THIRD DIVISION

January 14, 2004

No. 1-02-0198

GORDON GREDELL,

Plaintiff-Appellant and Cross-Appellee,

v.

WYETH LABORATORIES, INC., and AMERICAN HOME PRODUCTS COMPANY,

Defendants-Appellees and Cross-Appellants.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Dorothy Kirie Kinnaird,

Judge Presiding.

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff Gordon Gredell appeals from an order of the trial court dismissing his class action consumer fraud suit against defendants Wyeth Industries, Inc., and American Home Products Company and from the court's denial of his motion to reconsider that order.  Plaintiff alleged that defendants fraudulently marketed and sold five prescription drug products, known as Phenergan Expectorants, as cough and cold remedies providing expectoration and anesthetic relief of sore throat knowing that they had no scientific support for making either representation.  The court dismissed plaintiff's and the class's claims with prejudice, finding that the claims were time barred pursuant to the statute of limitations for the 
Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et seq.
 (West 2002) (formerly Ill. Rev. Stat. 1991, ch. 1211/2, par. 261 
et seq.
) (the Consumer Fraud Act) and because they were 
preempted by the 
Federal Food, Drug and Cosmetic Act of 1938 (21 U.S.C. § 301 
et seq
.) (the FDCA)
.  On appeal, plaintiff raises 15 issues and 16 subissues and requests that we reinstate the action.  In the event that we reinstate the action, defendants cross-appeal and request that we decertify the class.  
We will confine ourselves to the question of whether the court erred in dismissing plaintiff's and the class's cause of action because plaintiff failed to prove fraudulent concealment tolled the statute of limitations and because plaintiff had no cause of action under the Consumer Fraud Act and his claim was, therefore, preempted by 
the FDCA
.  We reverse and remand.

Background

Defendants
(footnote: 1) manufactured and marketed the five Phenergan Expectorant prescription drug products following approval of the products by the Food and Drug Administration (the FDA) in the 1950s.  Defendants marketed the products as being effective for the control of cough due to colds or minor upper-respiratory infections.  Package inserts accompanying the drugs also represented that the drugs provided soothing antiseptic relief of throat irritation and promoted expectoration.  

Prior to 1962, in order to obtain FDA approval for the sale of a new drug, the FDCA required manufacturers to show that a proposed drug was safe.  In 1962, the legislature amended the FDCA to require that manufacturers show safety and "substantial evidence" of effectiveness prior to obtaining FDA approval for sale of the drug.  Some prescription drugs already on the market, including the Phenergan Expectorants, were allowed to remain on the market while the FDA conducted a review of the drugs' efficacy claims.  On August 30, 1972, the FDA sent defendants the report of its investigation of the Phenergan Expectorants.  Phenergan Expectorant Plain and Phenergan VC Expectorant Plain were determined to be ineffective for cough while the other three products were found "effective but."  All five products were found "possibly effective" for expectoration.  
The FDA's determinations were based largely on the fact that the investigating panel was unaware of any evidence regarding the drugs' effectiveness for the particular indications, defendants having performed no clinical studies for the drugs' effectiveness for expectoration or soothing anaesthetic relief.  

On February 9, 1973, the FDA published its proposal to withdraw approval for the Phenergan Expectorants in the Federal Register.  Defendants submitted a "supplemental new drug application" for a proposed reformulation of the five Phenergan Expectorants.  The FDA was in the process of reviewing the efficacy of active ingredients found in most cough and cold remedies and would not consider defendants' supplemental new drug application until after it received the results of that review.  The review panel found that many of the ingredients found in cough and cold remedies, including the Phenergan Expectorants, were ineffective for the claims made.  Therefore, on May 25, 1982, the FDA published its proposal to withdraw approval for the Phenergan Expectorants' original formulations.  On February 2, 1984, it published its approval of defendants' reformulations.  Defendants withdrew the original Phenergan products from the market on August 15, 1984.

Plaintiff, individually and on behalf of all others similarly situated, filed a five count complaint against defendants on September 1, 1987.  Plaintiff alleged that defendants misrepresented the effectiveness of the five drugs, thereby violating the Consumer Fraud Act, the implied and express warranty provisions of the Uniform Commercial Code (810 ILCS 5/2-313, 5-314 (West 2002)) (the UCC), the Magnuson-Moss Warranty Federal Trade Commission Improvement Act (15 U.S.C. §2301 
et seq.
 (1994)) (the Magnuson-Moss Act) and committing common law fraud.  The court granted plaintiff's motion for class certification in February 1990, denied two motions by defendants to decertify the class in 1993 and 1994, entered a class certification order on July 7, 1994, and denied a third motion by defendants to decertify the class in 1995.  The 1994 class certification order provides:

"[T]he following class be certified to proceed as a class action, pursuant to 735 ILCS 5/2-1801, under Count III of plaintiff's Second Amended Complaint, on behalf of:

All consumers within the United States of America (excluding governmental entities and insurance companies) who, during the period February 9, 1973 until on or about August 15, 1984, purchased any of the following Phenergan Expectorant drug products:

1. Phenergan Expectorant Plain;

2. Phenergan VC Expectorant Plain;

3. Phenergan Expectorant with Codeine;

4. Phenergan VC Expectorant with Codeine;

5. Phenergan Expectorant Pediatric with Dextromethorphan."

Plaintiff filed the third amended complaint at issue here on July 12, 1994, asserting only a violation of the Consumer Fraud Act.
(footnote: 2)
 Plaintiff brings the action as a class action pursuant to section 2-801 of the Illinois Code of Civil Procedure (735 ILCS 5/2-801 (West 2002)
 (formerly Ill. Rev. Stat. 1991, ch. 110, par. 2-801)).  The third amended complaint alleged that defendants engaged in false and deceptive conduct in their marketing of the above products in violation of section 2 of the Consumer Fraud Act
 
and similar statutes existing in every other state which prohibit unfair and deceptive acts or practices in trade or commerce.  

Plaintiff asserted that the package inserts, labels and other marketing materials uniformly represented that each of the products was an effective expectorant and also effective in the treatment of other cough symptoms due to colds.  Plaintiff alleged that such representations were false and misleading because defendants had no reasonable basis for making the effectiveness claims nor scientific evidence to support them.  Plaintiff also alleged that defendants' conduct was unfair and deceptive because they failed to disclose that the FDA had determined that defendants had no substantial evidence for the efficacy claims.  Plaintiff stated that, as a result of defendants' unfair and deceptive practices, drugs were prescribed for and bought by plaintiff and the class members and that they were damaged as a result.  In their answer, defendants raised several affirmative defenses to plaintiff's claim, including the assertion that plaintiff failed to file his action within the applicable statute of limitations.  

The court bifurcated the trial, holding a hearing to determine whether defendants fraudulently concealed plaintiff's cause of action from him such that the applicable statute of limitations for his claim was tolled.  After a four-month trial on that issue and a five-year consideration period, the court dismissed plaintiff's case with prejudice, finding that the case was barred by the statute of limitations because plaintiff failed to prove fraudulent concealment of his cause of action and because it was preempted by federal law.  The court denied plaintiff's motion to reconsider and plaintiff timely appeals. 

 
Analysis

Standard of Review

Defendants raised two affirmative defenses based on the Consumer Fraud Act statute of limitations, arguing that both plaintiff's and the class members' suits were barred as untimely.  Plaintiff responded that the discovery rule applied to the cause of action and defeated defendants' statute of limitations defense.  In the alternative, he argued that defendants fraudulently concealed the cause of action from him, thereby extending the statute of limitations to five years from the date of discovery.  In order to address the statute of limitations defenses, the court held a hearing on the issue of fraudulent concealment.  After a four-month hearing, the court found that plaintiff failed to prove that defendants fraudulently concealed the causes of action and that, therefore, the actions were time barred.  We review the court's findings of fact regarding fraudulent concealment under a manifest weight of the evidence standard 
(Sandy Creek Condominium Ass'n v. Stolt & Egner, Inc.
, 267 Ill. App. 3d 291, 298, 642 N.E.2d 171, 177 (1994)) and its application of the statute of limitations, a question of law, 
de novo (Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.
, 199 Ill. 2d 325, 350, 770 N.E.2d 177, 193 (2002)).

Consumer Fraud Act Statute of Limitations

Plaintiff's sole basis for recovery was his assertion that he was entitled to damages because defendants violated the Consumer Fraud Act.  The legislature designed the Consumer Fraud Act to expand consumers' rights beyond the common law to eliminate all forms of deceptive and unfair business practices and to provide appropriate relief to consumers.  
Robinson v. Toyota Motor Credit Corp.
, 201 Ill. 2d 403, 416-17, 775 N.E.2d 951, 960 (2002);
 
Miller v. William Chevrolet/GEO, Inc.
, 326 Ill. App. 3d 642, 655, 658, 762 N.E.2d 1, 11, 14 (2001); 
Cuculich v. Thomson Consumer Electronics, Inc.
, 317 Ill. App. 3d 709, 716, 739 N.E.2d 934, 939 (2000).  The Act describes deceptive or unfair practices as: 

"including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact * * * in the conduct of any trade or commerce * * *."   815 ILCS 505/2 (West 2002).  

The statute of limitations for an action under the Act is three years and begins to run when the cause of action accrues.  815 ILCS 505/10a(e) (West 2002).  A cause of action generally accrues when the plaintiff suffers injury.  
Hermitage Corp. v. Contractors Adjustment Co.
, 166 Ill. 2d 72, 77, 651 N.E.2d 1132, 1135 (1995).  A cause of action not filed within the statute of limitations is time barred.  815 ILCS 505/10a(e) (West 2002). 

Discovery Rule
 

Plaintiff argued that the discovery rule applied to his cause of action.
(footnote: 3)  The discovery rule has been applied in actions filed pursuant to the Consumer Fraud Act.  
Hermitage Corp.
, 166 Ill. 2d at 79, 651 N.E.2d at 1136, citing
 Bradley v. Alpine Construction Co.
, 224 Ill. App. 3d 432, 586 N.E.2d 653 (1991);
 Sommer v. United Savings Life Insurance Co.
, 128 Ill. App. 3d 808, 819, 471 N.E.2d 606, 615 (1984). The rule generally postpones the starting of the limitations period until it is triggered by plaintiff's discovery of his cause of action.  
Hermitage Corp.
, 166 Ill. 2d at 82, 651 N.E.2d at 1137.  The statute of limitations would begin to run " 'when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused' " and, at that point, " 'the party is under an obligation to inquire further to determine whether an actionable wrong was committed.' "  
Hermitage Corp.
, 166 Ill. 2d at 86, 651 N.E.2d at 1139,
 
quoting
 Nolan v. Johns-Manville Asbestos, 
85 Ill. 2d 161, 171, 421 N.E.2d 864, 868 (1981).  

When a plaintiff asserts the discovery rule to delay commencement of the statute of limitations, he has the burden of proving the date of discovery, a factual question for the trial court to resolve.  
Hermitage Corp.
, 166 Ill. 2d at 85, 651 N.E.2d at 1138.  Plaintiff's testimony shows that he may have discovered that he might have a cause of action as late as 1986.  Applying the discovery rule, the three-year Consumer Fraud Act statute of limitations would thus start to run in 1986 and not expire until 1989, making plaintiff's 1987 suit timely. 

The court's opinion makes clear that it did not apply the discovery rule.  The court stated its findings as follows:

"Since this case was filed in Illinois, where a three-year statute of limitations applies, and since (using the early 1986 date of actual discovery by Mr. Gredell) plaintiff discovered his claim with plenty of time remaining before the expiration of the statute of limitations on August 15, 1987, this court finds the filing of this action by plaintiff on September 15, 1987, was outside the applicable statute of limitations and that plaintiff's action is barred by the statute."

The above-quoted paragraph shows that the court used the "continuing violations" rule, rather than the discovery rule, to determine the start of the statute of limitations. 

Continuing Violations Rule
 

"[W]here a tort involves continuing or repeated injurious behavior, 'the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease.' "  
  
Pavlik v. Kornhaber
, 326 Ill. App. 3d 731, 745, 761 N.E.2d 175, 186-87 (2001), quoting 
Hyon Waste Management Services, Inc. v. City of Chicago
, 214 Ill. App. 3d 757, 763, 574 N.E.2d 129, 132 (1991).  "A continuing violation * * * is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation."
  Hyon Waste Management Services, Inc. 
, 214 Ill. App. 3d at 763, 574 N.E.2d at 132 .  Assuming 
arguendo
 that defendants did, as plaintiff asserts, actively misrepresent the efficacy of their products, it is undisputed that those misrepresentations continued over a period of many years.  Given the continuous nature of the fraudulent misrepresentations, the statute of limitations for plaintiff's action would, therefore, begin to run on the date of last injury or when the tortious acts ceased.  The tortious acts ceased when defendants took the products off the market on August 15, 1984.  Therefore, pursuant to the continuing violation rule, the three-year statute of limitations for plaintiff's consumer fraud action would expire on August 15, 1987, the date used by the court to determine that plaintiff's action was time barred. 

Had the court applied the discovery rule, it would have used the date when plaintiff knew or reasonably should have known that he has been injured, in this case either early 1986 (the date the court found plaintiff knew of problems with the expectorants) or late 1982 (the date the court found plaintiff and the class members "could have known" about the problems).
(footnote: 4)
Fraudulent Concealment

Plaintiff also invoked the fraudulent concealment statute to extend the statue of limitations, asserting that he could not have discovered his cause of action even in the exercise of due diligence because defendants hid it from him.  A statute of limitations may be tolled if the person liable for the claim fraudulently concealed the existence of the cause of action from the plaintiff.  735 ILCS 5/13-215 (West 2002) (formerly Ill. Rev. Stat. 1991, ch. 110, par. 13-215); 
Foster v. Plaut
, 252 Ill. App. 3d 692, 698, 625 N.E.2d 198, 203 (1993).  In such a case, the plaintiff has five years after his discovery of the cause of action within which to file suit.  735 ILCS 5/13-215 (west 2002); 
Foster
, 252 Ill. App. 3d at 698, 625 N.E.2d at 203
.  
The trial court held a bifurcated hearing, the first phase of which was limited to the determination of whether plaintiff could prove his allegation that defendants fraudulently concealed the cause of action from him.  The court found that plaintiff failed to prove fraudulent concealment and we agree.

In order to prove fraudulent concealment, plaintiff must show affirmative acts or representations by defendants which were designed to prevent and, in fact, did prevent, plaintiff from discovering his claim.  
Foster
, 252 Ill. App. 3d at 699, 625 N.E.2d at 203; 
Waters v. Reingold
, 278 Ill. App. 3d 647, 660, 663 N.E.2d 126, 136 (1996),
 abrogated on other grounds
, 
Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.
, 182 Ill. 2d 6, 694 N.E.2d 562 (1998).  Plaintiff must show that defendants knew the acts or misrepresentations were false and made with the intent to deceive him and that he 
detrimentally relied on them such that he was lulled or induced to delay filing suit until after the statute of limitations expired. 
Foster
, 252 Ill. App. 3d at 699, 625 N.E.2d at 203.  Concealment may consist of "some trick or contrivance or other affirmative action intended to exclude suspicion, prevent inquiry or induce plaintiff to delay filing the claim."  
Waters
, 278 Ill. App. 3d at 660, 663 N.E.2d at 136.  However, mere silence by defendants and failure by plaintiff to learn of his cause of action do not amount to fraudulent concealment.  
Foster
, 252 Ill. App. 3d at 699, 625 N.E.2d at 203.  

As the trial court found, plaintiff's arguments regarding fraudulent concealment are merely reiterations of his assertions that defendants fraudulently misrepresented the Phenergan Expectorants' effectiveness with the intent that the public rely on those claims.  "Fraudulent misrepresentations which form the basis of the underlying cause of action do not constitute fraudulent concealment under section 13-215 in the absence of a showing that the misrepresentations also tended to conceal the cause of action."  
Waters
, 278 Ill. App. 3d at 660, 663 N.E.2d at 136, citing 
Foster
, 252 Ill. App. 3d 692, 625 N.E.2d 198; 
Smith v. Cook County Hospital
, 164 Ill. App. 3d 857, 862, 518 N.E.2d 336, 341 (1987).  Even taking as true plaintiff's assertion that defendants' efficacy claims were misrepresentations, plaintiff fails to show how the misrepresentations concealed the cause of action from him.  Defendants' alleged acts of concealment are the making of effectiveness claims without scientific support, elimination of detailed information about the drugs from the Physicians Desk Reference, marketing the drugs to doctors without informing them of the FDA's investigation into the drugs' effectiveness, failure to put a warning regarding the FDA's findings on the products labels  and failure to perform further studies on the drugs's efficacy.  These are clearly not acts intended to conceal a cause of action.  These acts are the "acts of wrongdoing" that form the underlying basis for plaintiff's consumer fraud action; they do not also tend to conceal violations of the Consumer Fraud Act.  See 
Waters
, 278 Ill. App. 3d at 660-61, 663 N.E.2d at 136.  Plaintiff does not show that defendants took the actions or made the misrepresentations in order to prevent plaintiff from discovering that he had a cause of action, let alone that he relied thereon and, as a result of that reliance, detrimentally delayed filing his suit until after the statute of limitations expired.  Plaintiff failed to prove that defendants purposely concealed his cause of action from him in the hope that he would delay filing.  Accordingly, the fraudulent concealment exception would not toll the running of the limitations period in this case and plaintiff's action would be time barred if that were the only basis for making the timeliness determination.

Due Process

However, as stated previously, plaintiff also asserted the discovery rule to toll the statute of limitations and it is clear that the court did not address the applicability of the discovery rule to plaintiff's cause of action.  Instead, rather than resolving this alternate basis for tolling of the statute of limitations, the court dismissed the cause of action as time barred and preempted by federal law.  We find the court's dismissal of the cause fundamentally unfair and a violation of due process.

As the court stated many times in its opinion, the bifurcated hearing was limited to the issue of fraudulent concealment of the cause of action.  On page one of its opinion, the court stated, "the first phase of trial was limited for the Court to determine whether plaintiff could establish by clear and convincing evidence each of the prerequisites of fraudulent concealment to overcome defendants' statute of limitations defense."  In other instances, the court referred to "the 'bifurcated trial' held before this court on the statute of limitations issue, i.e., the fraudulent concealment trial," to its earlier order that "the trial of this case would be bifurcated, with the first trial dealing with the issue of fraudulent concealment," and to its ultimate decision that "the case should first proceed to trial on the fraudulent concealment issue only."  Clearly the only issue to be considered during the hearing was fraudulent concealment.  

However, the court went beyond merely determining whether plaintiff proved fraudulent concealment.  Instead, it dismissed plaintiff's and the class members' claims because (a) the actions were time barred for failure to prove fraudulent concealment and (b) the claims were preempted by federal law because plaintiff had no cause of action under the Consumer Fraud Act.  In essence, the bifurcated trial had become a trial of the entire case. 

The hearing was to be limited only to a determination of whether one basis for tolling of the statute of limitations, fraudulent concealment, was proven.  Once the court determined that plaintiff failed to prove fraudulent concealment, it should have considered the alternate basis for tolling of the statute of limitations, the discovery rule.  The court did not do so but instead dismissed that cause as both time barred and preempted.  Without having made a determination regarding the discovery rule and its applicability, the court clearly could not find that the cause of action was time barred and erred in making that determination.    

The court far exceeded the stated limits of the fraudulent concealment hearing and violated the parties' due process rights when it determined that plaintiff could not prove a cause of action for violation of the Consumer Fraud Act and, based on that finding, declared the cause of action preempted by the FDCA.  Due process of law requires that a party be accorded procedural fairness, 
i.e.,
 given notice and an opportunity to be heard.  
Milenkovic
 v. 
Milenkovic
, 93 Ill. App. 3d 204, 215, 416 N.E.2d 1140, 1148 (1981)
.  Parties who have properly appeared in an action are entitled to notice of any impending motions or hearings.  
Berg v. Mid-America Industrial, Inc.
, 293 Ill. App. 3d 731, 734, 688 N.E.2d 699, 702 (1997); 
City of Chicago v. American National Bank & Trust Co. of Chicago
, 171 Ill. App. 3d 680, 688, 525 N.E.2d 915, 920 (1988).  The court scheduled the hearing here to address fraudulent concealment issues.  There is no evidence that anything other than fraudulent concealment was to be addressed, let alone that the cause of action would be ultimately decided.  It would be "unjust, unfair, and inequitable" to allow the dismissal order to stand where it is clear that the parties had no notice that such an order was contemplated.  
Berg
, 293 Ill. App. 3d at 735, 688 N.E.2d at 702.  Without such notice, the parties were denied the opportunity to be heard on the discovery rule and the elements of the underlying cause of action.  The hearing was not about the elements of the cause of action, whether there was an injury or whether the cause of action was preempted.  Although the court's findings of fact regarding the elements of fraudulent concealment would necessarily overlap subsequent findings regarding the elements of plaintiff's cause of action, the court's application of the findings to the elements of the cause of action without notice to the parties was beyond the scope of the noticed hearing.  The court's decision on the merits of the cause of action when those merits were not at issue in the hearing is especially egregious given that its decision was five years in the making.  We deem the dismissal order "null and void as a denial of [plaintiff's] constitutional rights to procedural due process" and reverse and remand.  
City of Chicago
, 171 Ill. App. 3d at 688, 525 N.E.2d at 920. 

Although defendants argue that plaintiff's counsel admitted that there was nothing left to try in the case except damages, we find the quoted "admission" was taken out of context.  It occurred prior to commencement of the bifurcated hearing, during an October 3, 1995, hearing in which the court announced it's decision to bifurcate the trial.  The quoted colloquy was as follows:

"THE COURT: What else is there left to try except damages?"  

PLAINTIFF'S COUNSEL Mr. Weltman: I think that's the only thing left."

It had been preceded by the following exchange:

"THE COURT: If they prove up all the elements of fraudulent concealment, haven't they also proved up a violation of the Consumer Fraud Act?

PLAINTIFF'S COUNSEL: The answer, I believe, is yes, Your Honor."

Clearly, this is merely an admission by plaintiff that, if all the elements of fraudulent concealment were proven, then only damages remained to be determined.  It is not an admission by plaintiff that 
failure
 to prove fraudulent concealment is tantamount to failure to prove its cause of action, a violation of the Consumer Fraud Act.  

An exchange some three months later during the bifurcated hearing was similar in vein:

"THE COURT:  Plaintiff says they're going to prove up in the case on fraudulent concealment, haven't they proved up the whole case except for damages, Mr. Weltman?

PLAINTIFF'S COUNSEL Mr. Weltman:  I would say pretty much so." 

Again, this is merely a statement that the elements of a violation of the Consumer Fraud Act would no longer be at issue only when the elements of fraudulent concealment had been proven.  Since fraudulent concealment was not proven, plaintiff's admission is moot.

For the reasons stated above, we affirm the trial court's finding that plaintiff did not prove fraudulent concealment but reverse its dismissal of the cause of action as time barred and preempted.  We remand to the trial court for further proceedings.  Given our remand, we decline to rule on defendants' cross-appeal seeking decertification of the class since this issue should be raised in the trial court.

Reversed and remanded.

HOFFMAN, P.J., concurs.

HALL, J., concurs in part and dissents in part.

JUSTICE HALL, concurring in part and dissenting in part.

While I agree with the majority's conclusion that the plaintiff failed to prove fraudulent concealment, I disagree that the trial court's decision dismissing the complaint as time barred and preempted must be reversed.

The majority holds that the plaintiff was denied due process because the trial court dismissed the plaintiff's complaint without also determining whether the discovery rule tolled the statute of limitations in this case.  

Initially, I disagree with the majority that the plaintiff raised the discovery rule issue.  The majority cites a paragraph in the plaintiff's third amended complaint which refers to the discovery rule.  However, in that paragraph, the plaintiff alleged fraudulent concealment on the part of the defendants, and not that he could not have otherwise discovered his injury.  Therefore, the application of the discovery rule was not before the trial court.

Next, as the majority observed above, the discovery rule begins to run when the party "knows" or "reasonably should know" that he has been injured and that his injury was wrongfully caused.  The plaintiff in this case maintained that he did not actually know that he might have a cause of action until 1986.  

However, in its memorandum opinion, the circuit court stated as follows:

"Certainly no later than the end of 1982 any responsible health care provider should have known about the problems with the Phenergan Expectorants.  And by the end of that year, merely by asking a physician or pharmacist or going to the local library, an interested consumer could have been appraised."

In light of the circuit court's conclusion that the plaintiff could have discovered his injury and that it was wrongfully caused as early as the end of 1982, applying the discovery rule would only have extended the statute of limitations to 1986, rendering the plaintiff's 1987 suit time barred. 

The majority does not hold that the circuit court's determination that the plaintiff could have reasonably known about his injury in 1982 was error.  Instead, the majority concludes that due process was violated when the plaintiff was not given an opportunity to be heard on the issue of the discovery rule.

In the present case, both parties were present at the trial and presented evidence on whether his complaint was time-barred.  The plaintiff does not argue that he was denied the opportunity to present evidence on the discovery rule issue, only that the trial court's conclusions were erroneous.   

The trial court's exhaustive findings and extensive 112 page ruling in this case disposed of the discovery rule issue as well as the fraudulent concealment issue, based upon the evidence submitted at a 4 ½ month trial.  It was not necessary for the trial court to specifically rule on the discovery rule, since its finding that, as of 1982, the plaintiff could have discovered his injury and its wrongful cause, effectively rendered that issue meritless.  

Finally, in the absence of any argument by the plaintiff that he was denied the opportunity to present evidence on the issue of the discovery rule, there is no basis for the majority's 
sua sponte
 determination that the plaintiff was denied due process.

The trial court's finding that the complaint was time-barred ended the case.

I therefore respectfully concur in part and dissent in part. 

FOOTNOTES
1:  Wyeth Laboratories, Inc., is a subsidiary of American Home Products and was the manufacturer of the five Phenergan Expectorant products.

2:  Plaintiff voluntarily dismissed his counts alleging a violation of the express warranty provision of the UCC and common law fraud.  The court dismissed the counts alleging violations of the implied warranty provision of the UCC and of the Magnuson-Moss Act.

3:  Although defendants argue that plaintiff did not raise the applicability of the discovery rule below, we find that plaintiff did sufficiently raise the issue below in paragraph 28 of his third amended complaint, which asserts:

"Although not required under the [Consumer Fraud Act], since the actual discovery rule is followed under the [Consumer Fraud Act], defendants['] conduct, taken as a whole, including the manner in which they changed their marketing and disclosure practices during the class period, amounted to fraudulent concealment, tolling any applicable statute of limitations.  As a result, plaintiff, even in the exercise of due diligence, was not aware of and did not discover these matters until shortly before filing suit."

4:  In the context of the fraudulent concealment determination, the court determined that plaintiff first became aware of a question about the effectiveness of the Phenergan Expectorants in early 1986 and that plaintiff and the class members "could have" discovered the alleged fraud in the exercise of reasonable diligence no later than late 1982 by asking a physician or pharmacist about the products or checking the local library for such information.