RONALD M. MALOOLEY *et al.*, Plaintiffs and Counterdefendants-Appellants and Cross-Appellees, v. LUELLA L. ALICE *et al.*, Defendants and Counterplaintiffs-Appellees and Cross-Appellants.

Third District   No. 3—92—0946

Opinion filed September 23, 1993.

52

John A. Balestri, of La Salle, for appellants.

Richard W. Zuckerman, of Peoria, for appellees.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiffs, counterdefendants Ronald M. Malooley and his wife, Dorothy A. Malooley (Malooley), appeal from a judgment entered against them following a three-day bench trial held in Putnam County circuit court. The Malooleys filed suit against defendants to forfeit a land contract and outstanding rent owed. Defendants, counterplaintiffs Luella L. Alice and her son Carl S. Alice (Alice) cross-appeal from the same judgment. The Alices counterclaimed for damages suffered as a result of Ronald Malooley's alleged misrepresentation of the condition of the property at issue. We affirm on all issues.

Ron Malooley is a licensed real estate broker who owns and operates Malooley Realty in Spring Valley. The Malooleys owned a six-acre parcel on which was situated a home, pole building and small barn. In 1979, the Malooleys sold the property on contract to Michael and Jane Cusack (Cusack). During the Cusacks' possession of the property, they experienced several problems with the home and informed Malooley.

Specifically, Cusack informed Malooley that the roof leaked in the sunroom, around the chimney and over the stairway going upstairs. Cusack also told Malooley that the soil pipe was rotten. Cusack replaced the roof over the sunroom and patched and tarred the roof

around the chimney several times. Cusack also patched the soil pipe several times.

In 1987, Cusack began to experience financial difficulty, and in September, decided to give the property back to Malooley. After Cusack vacated the property, Malooley hired a contractor, William Nickel (Nickel), to make repairs to the home. Nickel made repairs to the roof over the sunroom, the stairs, a porch on the north side of the house, and around the chimney. After making these repairs, Nickel tested his work by running water over the repaired areas; he also observed the repaired areas after a rain storm. Nickel examined the electrical system and the plumbing and believed that they were adequate. Malooley placed the property back on the market and listed it with Malooley Realty.

In November 1987, the Alices were shown the property by Royce Mignone (Mignone), an agent of Malooley Realty. The utilities were not on at the time of the showing. The Alices told Mignone that they did not have that much money and that they were looking for a property that did not require a great deal of maintenance. When Mignone showed the Alices the property, they expressed concerns about the condition of the home, specifically regarding water spots on the ceiling. Mignone suggested that they talk to Ronald Malooley.

The Alices subsequently discussed the purchase of the property with Malooley. The Alices told Malooley that they were looking for a property that was relatively maintenance-free, and asked if there was anything wrong with the property. Malooley told the Alices that other than a small leak in the roof of the sunroom, there was nothing wrong with the property.

On November 12, 1987, the Alices entered into a written agreement for the purchase of the property by way of a land contract. The Alices took possession of the property in January 1988.

Almost immediately after taking possession, the soil pipe in the basement broke. Malooley hired Nickel to repair the pipe. Shortly thereafter, the Alices experienced trouble with an electrical switch in the living room. They called an electrician who replaced the switch. Upon further inspection of the electrical system, the electrician believed that the wiring in the house needed to be updated or replaced.

The Alices also experienced trouble with the hot water heater shortly after moving into the property. Malooley replaced the hot water heater at his own expense. Another problem arose when the walls around the upstairs bathtub collapsed while Carl Alice was taking a bath.

In early March 1988, the Alices began to experience problems with the roof leaking in the family room, in the sunroom, in the stairwell and around the chimney. Carl Alice attempted to repair these leaks using roofing tar. During this period the Alices also observed water leaking into the basement through the blocks of the foundation. The Alices filed a claim with their insurance company in April 1988 and were given a check for $343.15 to repair the damage caused by the leaking.

The Alices thought that they had resolved the leaking problems until a severe storm occurred in May 1988. The storm blew some shingles off of the sunroom, and the roof again leaked in the family room, the sunroom, in the stairwell and around the chimney. The stairwell wall leading upstairs buckled and collapsed. The Alices filed another claim with their insurance company and received a check in the amount of $999.40 to repair the damage caused by the storm. The Alices got estimates from professional roofers to repair the roof, but were unable to afford to have the work done, given the amount of the insurance check. Carl used the insurance money to buy materials and attempted the repairs himself.

In the summer of 1988, the Alices experienced problems with the central air conditioning of the house. A repairman was called, and two visits were necessary before the air conditioning was repaired. While Carl Alice was with the repairman checking the air conditioner, the cold air duct fell down and could not be put back up. The repairman told Carl that all of the duct work needed to be replaced.

After each of the above-described occurrences, the Alices informed Ron Malooley of their problems. Eventually Malooley responded by saying that he did not sell the house to become a caretaker of it. In January 1989, the Alices told Malooley that they would not continue to pay on the contract until Malooley repaired the house. In February 1989, Malooley responded by having an eviction notice served on the Alices. The Alices refused to vacate the property or to pay on the contract. Malooley filed a forcible entry and detainer complaint that included a claim for rent. The Alices filed a three-count countercomplaint against the Malooleys based on claimed violations of the Dwelling Unit Installment Contract Act (Ill. Rev. Stat. 1989, ch. 29, par. 8—21), common law fraud, and the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 261) (Consumer Fraud Act).

The Putnam County circuit court granted Malooley a judgment for forcible entry and detainer on September 26, 1989, and Malooley regained possession of the property on November 2, 1989. A three-

day bench trial was held on the Alices' countercomplaint and on the Malooleys' claim for rent. The trial court entered judgment in favor of the Malooleys as to the first two counts of the Alices' complaint, but found that Ron Malooley had violated the Consumer Fraud Act. The Malooleys' claim for rent was denied. The court did not address the Alices' punitive damage claim.

The Malooleys contend that the trial court erred in finding that Ron Malooley violated the Consumer Fraud Act. The Consumer Fraud Act has been liberally interpreted by the courts of this State to give effect to the legislative goals behind the enactment. (*Eshaghi v. Hanley Dawson Cadillac Co.* (1991), 214 Ill. App. 3d 995, 1001, 574 N.E.2d 760.) These legislative goals are recognized as a policy to give a consumer broader protection than common law fraud or negligent misrepresentation by prohibiting any " 'deception, fraud, false pretense *** misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon concealment *** in the conduct of any trade or commerce.' " *Eshaghi*, 214 Ill. App. 3d at 1001-02, quoting Ill. Rev. Stat. 1987, ch. 121½, par. 262.

The elements necessary to sustain a cause of action under the Consumer Fraud Act are:

"(1) a statement by the seller; (2) of an existing or future material fact; (3) that was untrue, without regard to defendant's knowledge or lack thereof of such untruth; (4) made for the purpose of inducing reliance; (5) on which the victim relies; and (6) which resulted in damages to the victim." (*Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.* (1992), 235 Ill. App. 3d 70, 84-85, 600 N.E.2d 1218.)

The Consumer Fraud Act does not require actual reliance on the part of the victim. (*Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 542, 607 N.E.2d 194.) Whether a party has adequately proved the elements of statutory fraud is a question of fact, and a reviewing court will not disturb a trial court's finding unless it is against the manifest weight of the evidence. *Black v. Iovino* (1992), 219 Ill. App. 3d 378, 389, 580 N.E.2d 139.

The Malooleys' arguments regarding this issue are grounded on the proposition of law that the Alices must establish the elements of the Consumer Fraud Act by clear and convincing evidence and that the Alices failed to sustain their burden. The Malooleys rely upon *Munjal v. Baird & Warner, Inc.* (1985), 138 Ill. App. 3d 172, 183, 485 N.E.2d 855, and *General Motors Acceptance Corp. v. Grissom* (1986), 150 Ill. App. 3d 62, 65, 501 N.E.2d 764, *appeal denied* (1987), 114 Ill.

2d 545, to support their argument that the clear and convincing standard of proof is applicable to the Consumer Fraud Act.

The Alices argue that the proper standard of proof under the Consumer Fraud Act is a preponderance of the evidence, citing *In re Tapper* (N.D. Ill. 1991), 123 Bankr. 594.

This court was faced with this issue in *Hoke v. Beck* (1992), 224 Ill. App. 3d 674, 679-80, 587 N.E.2d 4, but declined to resolve it. As we stated above, it is generally recognized that the Consumer Fraud Act should be liberally construed to effect its purposes. (*Eshaghi*, 214 Ill. App. 3d at 1001-02.) This purpose is to eradicate " 'all forms of deceptive and unfair business practices and to grant appropriate remedies to defrauded consumers.' " (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 563, 491 N.E.2d 464, quoting *American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 257, 361 N.E.2d 1370.) A cause of action under the Consumer Fraud Act is easier to establish than a common law action of fraud or negligent misrepresentation. (*Eshaghi*, 214 Ill. App. 3d at 1001-02.) Therefore, we hold that it is entirely consistent with the legislative intent behind the Consumer Fraud Act to establish the standard of proof as a preponderance of the evidence. (See *In re Tapper*, 123 Bankr. at 602.) Under this standard, we hold that the Alices have sustained their burden.

Ronald Malooley is a real estate broker licensed under the Real Estate License Act of 1983 (Ill. Rev. Stat. 1989, ch. 111, par. 5801 *et seq.*). Brokers occupy a position of trust with respect to purchasers; they owe a duty to exercise good faith in their dealings with purchasers and have a duty to disclose material facts. (*Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 162, 510 N.E.2d 409, *appeal denied* (1987), 116 Ill. 2d 578.) Thus, a broker's silence may constitute fraudulent concealment of material facts. *Zimmerman*, 156 Ill. App. 3d at 162.

■ The trial court specifically found that Ronald Malooley's statements to the Alices regarding the condition of the house induced the Alices to the purchase of the property. Malooley's statements were in regard to a material fact: the condition of the house. The Alices informed Mignone and Malooley that they were looking for a "maintenance free" property. In light of the testimony offered by the former owner of the property, Cusack, Malooley was aware of the deficiencies of the property.

The trial court found that Ron Malooley intended to create a reliance in the Alices. While this issue was fairly close and required extensive review of the record, we will not second-guess the trier of

fact, who was able to observe the witnesses' testimony and form opinions as to their credibility. The trial court's decision is affirmed.

We turn to the Malooleys' next issue on appeal, whether the trial court erred in refusing to award the Malooleys rent for the period of time that the Alices occupied the property without paying on the land contract. The trial court's order stated, in relevant part, as follows:

"[T]he Court will enter judgment in favor of the Plaintiff for $2,000 being the return of their purchase price, together with all payments made, which by the Court's notes are $3,900 (13 x $300), *and as a further sanction under the Act, the Court, since the property was rendered virtually uninhabitable, would bar the Plaintiff Malooley's [sic] claim for rent.*" (Emphasis added.)

The Malooleys argue on appeal that they were entitled to the rent pursuant to section 9—201 of the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1989, ch. 110, par. 9—201). While it is true that section 9—201 provides for recovery of rent "after termination by forfeiture where the vendee wrongfully refuses to give up possession of land," the issue is whether the trial court had the authority to assess sanctions under the Consumer Fraud Act.

■ Under section 10a(a) of the Consumer Fraud Act, "[t]he court, in its discretion may award actual damages or *any other relief* which the court deems proper." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 121½, par. 270a(a).) From the face of section 10a(a), it appears that the trial court's sanction was within the discretion of the trial court. In fact, section 10a(a) has been upheld by this court to support an award of punitive damages. (*Black*, 219 Ill. App. 3d at 393.) In light of the trial court's finding that the property was virtually uninhabitable during the period for which the Malooleys are claiming rent, the trial court did not abuse its discretion in denying their claim as an additional sanction under the Act. The trial court's decision is affirmed.

We now turn to the Alices' claim on cross-appeal, that the trial court erred in refusing to award the Alices punitive damages. Generally, if a plaintiff can demonstrate gross deception or willful and wanton misconduct, the determination as to whether the plaintiff is entitled to exemplary damages lies with the trier of fact. (*Siegel*, 153 Ill. 2d at 547.) The initial determination of whether the facts and circumstances justify the imposition of punitive damages is a question of law. *Black*, 219 Ill. App. 3d at 393.

■ This court finds that the trial court did not err in refusing to award the Alices punitive damages. Punitive damages are penal in

nature and are not intended to act as a windfall for the party to whom the punitive damages are awarded. (*Black*, 219 Ill. App. 3d at 393.) There is nothing in the record to indicate gross deception or willful or wanton conduct by the Malooleys in this case.

The trial court's decision is affirmed on all issues.

Affirmed.

BRESLIN and SLATER, JJ., concur.