(text box: 1) NO. 5-99-0830

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

____________________________________________________________________________________________

MICHAEL E. AVERY 
et al.
, on Behalf of ) Appeal from the

Themselves and All Others Similarly Situated, ) Circuit Court of

) Williamson County.

Plaintiffs-Appellees, )

)

) No.  97-L-114

)

STATE FARM MUTUAL AUTOMOBILE )

INSURANCE COMPANY, ) Honorable

) John Speroni,

Defendant-Appellant. ) Judge, presiding.

____________________________________________________________________________________________

JUSTICE MAAG delivered the opinion of the court:

State Farm Mutual Automobile Insurance Company (State Farm) appeals from a $1.18 billion judgment entered against it in a nationwide class action lawsuit tried in the circuit court of Williamson County, Illinois.  The three-count complaint, filed on behalf of a class of State Farm automobile insurance policyholders (plaintiffs), alleged breach of contract, consumer fraud, and claims seeking equitable relief.  On appeal State Farm seeks the decertification of the class and a reversal of the judgment below or, alternatively, a new trial.  State Farm also seeks to have the punitive damages award vacated or reduced.   

In count I of the complaint, plaintiffs alleged that State Farm issued form contracts containing an identical promise to its policyholders nationwide.  Plaintiffs contended that in exchange for payment of the insurance premium, State Farm had promised to pay for replacement parts of "like kind and quality" that would restore the vehicle to its "pre-loss condition" and that it breached this promise by uniformly specifying inferior non-original equipment manufacturer (non-OEM) parts when they were available and cheaper than original equipment parts made by the automobile manufacturer (OEM).  Counts II and III alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 
et seq.
 (West 1998)).  In those counts, plaintiffs claimed that State Farm had a nationwide claims practice of uniformly specifying cheaper non-OEM crash parts on damage estimates issued to its policyholders despite the fact that it knew that those parts were inferior in quality and condition and would not return the damaged vehicle to its preloss condition.  Plaintiffs claimed that by adopting and employing this claims practice, State Farm deceived its policyholders in that it failed to inform them of the inferior quality of specified replacement parts.  It was alleged that State Farm was able to succeed in this deception by representing that the inferior parts met high performance criteria and by offering a bogus guarantee to replace unsatisfactory non-OEM parts at no cost to the policyholder.  

State Farm objected to the certification of the class, on the grounds that the individual questions of fact and law overwhelmingly dominated any purported common questions in the contract and consumer-fraud claims.  State Farm also denied the allegations of the complaint.

The trial court conducted a pretrial evidentiary hearing on the class-certification issue.  After considering documents and the testimony of several witnesses, the court certified the class as follows:  

"All persons in the United States, except those residing in Arkansas and Tennessee, who (1) were insured by a vehicle casualty insurance policy issued by Defendant State Farm and (2) made a claim for vehicle repairs pursuant to their policy and had imitation[,] that is, non-factory-authorized and/or non-OEM parts installed on their vehicles or else received monetary compensation determined in relation to the cost of imitation parts.  Excluded from the class are employees of Defendant State Farm, its officers, its directors, its subsidiaries, or its affiliates.  

In addition, the following persons are excluded from the class:  (1) persons who resided in Illinois and whose policies were issued/executed prior to April 16, 1994, and (2) persons who resided in California and whose policies were issued/executed prior to September 26, 1996." 

The trial court also reviewed State Farm auto policies that were issued to class members who resided in states other than Illinois.  The court found that there were some variations in the form of the policy from state to state, but it concluded that these variations were immaterial because the operative policy language in each policy was susceptible to uniform interpretation.  The court determined that in each policy State Farm made the identical promise to pay for parts "of like kind and quality" that would restore the vehicle to its "original pre-loss condition". 

I.  Plaintiffs' Contentions At Trial

A.  Breach of Contract

In the breach-of-contract claim, plaintiffs alleged that State Farm's practice of specifying non-OEM parts constituted a breach of its contractual obligation to pay for parts "of like kind and quality" to restore the vehicles to "pre-loss condition".  This class-wide claim was based on plaintiffs' theory that the non-OEM parts specified in the damage estimates were categorically inferior.  Plaintiffs presented evidence to demonstrate that State Farm had a uniform, corporate-wide claims adjustment manual that dictated the policy for the settlement of property-damage claims with its insureds and that this policy and practice was devised, implemented, dictated, and monitored from its home office in Bloomington, Illinois.  

B. The Consumer Fraud and Deceptive Business Practices Act

In the consumer-fraud claim, plaintiffs alleged that State Farm knowingly concealed information about the inferior condition of the non-OEM parts it was specifying on damage estimates and misrepresented the quality and condition of those parts to its policyholders.  Plaintiffs presented evidence, in the form of State Farm's own documents and testimony from past and current State Farm employees, to show that State Farm knew that the non-OEM parts were inferior in terms of fit, quality, function, performance, corrosion resistance, appearance, and safety.  These parts were represented to policyholders as "quality replacement parts".  There was also evidence that State Farm's guarantee that it would replace non-OEM parts at no cost to the unsatisfied policyholders upon demand was bogus.  If the aftermarket part was warranted by the part manufacturer, the policyholder was required to contact the manufacturer for relief.  In most cases, these part manufacturers were located outside the United States in Taiwan or another country.  If the policyholder demanded replacement of the non-OEM part, a State Farm adjustor was required to investigate the claim, and if it was approved, an OEM replacement part was installed but the cost was charged to the policyholder as an indemnity payment.

II. State Farm's Contentions At Trial  

State Farm defended by presenting witnesses who testified that the use of non-OEM parts had been approved in all states in which the class members reside, that non-OEM parts were "equivalent" or "functionally equivalent" to OEM parts, that the use of non-OEM parts did not adversely affect occupant safety, and that non-OEM parts did not reduce the value of the vehicle.  State Farm also presented evidence to show that it advised its policyholders of its use of non-OEM parts in the policy, in estimates, and in a pamphlet provided with the estimate.  There was also evidence that 95% of State Farm's policyholders renewed their policies.  This evidence was offered in an attempt to prove that State Farm insureds were satisfied customers.  State Farm also presented as experts those who had practical experience and those with credentials similar to plaintiffs' experts, to counter plaintiffs' opinion witnesses.  Thus, there was a classic battle of experts, and the fact finders were required to determine the weight and credibility of these witnesses. 

III.  The Verdict and Judgment

After many hours of deliberation, the jury returned a verdict on the breach-of-contract claim.  The jury found that State Farm failed to perform its obligations under the contract and breached its contract with the plaintiff class.  Damages to the plaintiff class were fixed at $243,740,000 in direct damages and $212,440,000 in consequential damages.  

The consumer-fraud counts of the complaint were resolved in a bench trial.  In its written judgment, the trial court found that State Farm misrepresented, concealed, suppressed, or omitted material facts concerning the non-OEM crash parts with the intent that its policyholders rely upon these deceptions in violation of the Act.  The trial court noted that it concurred with the jury's verdict on the breach-of-contract claim.  The court found that plaintiffs had incurred actual damages as a result of State Farm's deceptive practices, but the court did not award actual damages, noting that the jury had awarded identical actual damages in the breach-of-contract case and that plaintiffs could not recover these damages twice.  The court awarded the sum of $130 million in disgorgement damages (representing the direct savings State Farm realized from use of non-OEM parts) and imposed a constructive trust on that sum.  The court also awarded $600 million in punitive damages.  The court granted declaratory relief, holding that State Farm was obligated to pay for crash parts of like kind and quality which restored a vehicle to its preloss condition.  The court denied the prayer for injunctive relief, finding that there was an adequate remedy at law.  Judgment was entered on the verdicts, but the court retained jurisdiction over the parties and the fund to enforce all provisions of the judgment, to administer the damages awarded, and to consider attorney fees.  It is from this judgment that State Farm appeals.

IV.  Issues on Appeal

There are certain standards that the parties are required to meet when raising any issue on appeal.  It is well established that a court of review is entitled to have briefs submitted that are articulate and organized and present cohesive legal argument in conformity with our supreme court rules.  
Schwartz v. Great Central Insurance Co., 
188 Ill. App. 3d 264, 268, 544 N.E.2d 131, 133 (1989).  A reviewing court is also entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are waived.  
Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.
, 118 Ill. 2d 389, 401, 515 N.E.2d 1222, 1227 (1987).  Mere contentions without argument or citation of authority do not merit consideration on appeal (
Fuller v. Justice
, 117 Ill. App. 3d 933, 942, 453 N.E.2d 1133, 1139 (1983)), nor do statements unsupported by argument or citation of relevant authority.  
Hutchings v. Bauer
, 212 Ill. App. 3d 172, 183, 571 N.E.2d 169, 176 (1991), 
rev'd on other grounds
, 149 Ill. 2d 568, 599 N.E.2d 934 (1992).  Contentions supported by some argument but by absolutely no authority do not meet the requirements of Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)).
  In re Marriage of Drummond
, 156 Ill. App. 3d 672, 684, 509 N.E.2d 707, 716 (1987).  We point out these requirements because in the argument portion of the briefs, nearly every issue argued contains multiple subissues consisting of a single sentence or paragraph.  These subissues appear as naked assertions that are rarely clothed with citation to the record or to pertinent authority.  Often these miniclaims also lack a developed argument.  They appear from nowhere and then vanish in a twinkling, never to be heard of again.  We will give these matters all the attention they deserve.  None!

These rules have not changed in almost a century.  "If the questions involved in a case are of sufficient importance to justify asking this court to decide them, they are worthy of the careful consideration of counsel presenting them.  If the case is not properly presented and the court is not given the benefit of precedents there is danger of a decision being rendered that will not be in harmony with the weight of authority.  It is the duty of attorneys practicing in this court to present to the court the authorities supporting their views and to assist the court in reaching a correct conclusion."  
Kelley v. Kelley
, 317 Ill. 104, 107, 147 N.E. 659 (1925).  "Reviewing courts are entitled to have issues clearly defined [and] to be cited pertinent authorities and are not a depository in which an appellant is to dump the entire matter of pleadings, court action, argument[,] and research as it were, upon the court."  
In re Estate of Kunz
, 7 Ill. App. 3d 760, 763, 288 N.E.2d 520, 523 (1972).  

During the trial and on appeal, the parties argued at length about whether the evidence at trial established that non-OEM parts were inferior to OEM parts, whether non-OEM parts were categorically inferior, and what other conclusions should be drawn from the evidence presented.  It is not our function as a reviewing court to reweigh the evidence.  The rule we must apply in considering the evidence is as follows:

"An initial step in analyzing the issue before us is to determine the authority of the jury, trial court, and appellate court[] and their relationship to one another.  Unquestionably, it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony.  [Citation.]  A trial court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions[] or because the court feels that other results are more reasonable.  [Citations.]  Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way."  
Maple v. Gustafson
, 151 Ill. 2d 445, 452-53, 603 N.E.2d 508, 511-12 (1992). 

We are compelled to view all the evidence and inferences therefrom in the light most favorable to the verdict winner.  
Quality Granite Construction Co. v. Hurst-Rosche Engineers, Inc.
, 261 Ill. App. 3d 21, 632 N.E.2d 1139 (1994).  Accordingly, that is the view we adopt in considering the questions of fact raised herein.

While State Farm has not properly preserved for review a number of the issues it has raised in its brief, we must remind the parties that the doctrine of waiver is an admonition upon the parties, not a restriction upon the jurisdiction of a reviewing court.  
Hux v. Raben
, 38 Ill. 2d 223, 224, 230 N.E.2d 831, 832 (1967).  A reviewing court, in its discretion, may consider issues not properly preserved by the parties, in the exercise of its responsibility to reach a just result and to maintain a sound body of precedent.  
Hux
, 38 Ill. 2d at 225, 230 N.E.2d at 832; 
Wagner v. City of Chicago
, 166 Ill. 2d 144, 148, 651 N.E.2d 1120, 1122 (1995).  In this decision, we have pointed out a number of instances where an issue raised on appeal has, in fact, been waived, and then we have proceeded to address many of those issues on the merits.  We did so in the interest of thoroughly considering the issues raised in this appeal.  Our consideration of the merits did not change the outcome.

A. The Class Certification

The policy objective behind the class action is to encourage individuals, who may otherwise lack incentive to file individual actions because their damages are limited, to join with others to vindicate their rights in a single action.  
Hansberry v. Lee
, 311 U.S. 32, 41, 85 L. Ed. 22, 27, 61 S. Ct. 115, 118 (1940).  In 
Hoover v. May Department Stores Co.
, this court noted that class actions are particularly attractive in consumer-protection cases because individual suits are often not economically feasible.  
Hoover v. May Department Stores Co.
, 62 Ill. App. 3d 106, 112, 378 N.E.2d 762, 768 (1978), 
rev'd on other grounds
, 77 Ill. 2d 93, 395 N.E.2d 541 (1979).  The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in recovery that is worthy of an attorney's time and costs of litigation and that provides some measure of restitution to the injured party and deterrence to the wrongdoer.  See 
Hoover
, 62 Ill. App. 3d at 112, 378 N.E.2d at 768; 
Gordon v. Boden
, 224 Ill. App. 3d 195, 204, 586 N.E.2d 461, 467 (1991).  

In order to maintain a class action in Illinois, the court must find that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of fact or law common to the class, (3) the representative parties will fairly and adequately protect the interests of the class, and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.  735 ILCS 5/2-801 (West 1998). 

The certification of a class is within the sound discretion of the trial court and will be disturbed only upon a clear abuse of discretion or application of impermissible legal criteria.  
Slimack v. Country Life Insurance Co.
, 227 Ill. App. 3d 287, 292, 591 N.E.2d 70, 74 (1992).  The scope of appellate review is limited to an assessment of the trial court's exercise of discretion and does not extend to an independent, 
de novo
 evaluation of the facts alleged to justify litigation of the case as a class action.  
Carrao v. Health Care Service Corp.
, 118 Ill. App. 3d 417, 427, 454 N.E.2d 781, 789 (1983). 

On appeal, State Farm claims that the trial court abused its discretion by certifying and thereafter failing to decertify the class of millions of policyholders, because all prerequisites of the class action statute were not met.  

State Farm does not actively dispute the trial court's finding that the class is so numerous that joinder of all members would be impractical.  There is no question that litigating individual lawsuits would be a waste of judicial resources and that addressing common issues in one action would aid judicial administration.  The fact that there may be many individual issues is relevant to the ultimate decision whether to certify the case as a class action.  It is irrelevant to the numerosity and joinder element.  Therefore, the first prerequisite of section 2-801 of the Code of Civil Procedure (Code) (735 ILCS 5/2-801 (West 1998)) is established.  See 
Gordon
, 224 Ill. App. 3d at 200, 586 N.E.2d at 464.

Turning to the second prerequisite, State Farm contends that class certification was improper because common questions of fact or law did not predominate over questions affecting only individual class members.  State Farm argues that in order to determine whether each class member has a right to an award of damages under the breach-of-contract claim, there must be evidence concerning each member's repairs, including identification and evaluation of the damaged part and the specified replacement part, evidence of the vehicle's preloss condition, any affirmative defenses such as waiver or consent, and whether and the extent to which each member was damaged by the alleged breach.

As long as there are questions of fact or law common to the class and these predominate over questions affecting only individual members of the class, the provisions of subsection 2-801(2) (735 ILCS 5/2-801(2) (West 1992)) have been met.  
Steinberg v. Chicago Medical School
, 69 Ill. 2d 320, 338, 371 N.E.2d 634, 643 (1977).  A common question may be shown when the claims of the individual class members are based upon the common application of a statute or when the members are aggrieved by the same or similar conduct (
Miner v. Gillette Co.
, 87 Ill. 2d 7, 19, 428 N.E.2d 478, 484-85 (1981)) or a pattern of conduct (
Slimack
, 227 Ill. App. 3d at 299, 591 N.E.2d at 78; 
Purcell & Wardrope Chartered v. Hertz Corp.
, 175 Ill. App. 3d 1069, 1077, 530 N.E.2d 994, 1000 (1988)).  Satisfaction of the prerequisite pertaining to predominating common questions of fact or law necessitates a showing that successful adjudication of the purported class representatives' individual claims will establish a right of recovery or resolve a central issue on behalf of the class members.  
Society of St. Francis v. Dulman
, 98 Ill. App. 3d 16, 18, 424 N.E.2d 59, 61 (1981).  The fact that the class members' recoveries may be in varying amounts which must be determined separately does not necessarily mean that there is no predominate common question.  
Society of St. Francis
, 98 Ill. App. 3d at 18, 424 N.E.2d at 61; 
McCarthy v. La Salle National Bank & Trust Co.
, 230 Ill. App. 3d 628, 634, 595 N.E.2d 149, 153 (1992).

The record demonstrates that plaintiffs presented evidence to show that State Farm made the same promise (
i.e.
, to pay for parts "of like kind and quality" to restore "pre-loss condition") to its policyholders throughout the country.  State Farm's own witness, Don Porter, a claims consultant, acknowledged that State Farm had a uniform nationwide obligation to policyholders.  This promise was to specify parts of like kind and quality to OEM parts so as to restore preloss condition.  State Farm devised a nationwide policy mandating the use of non-OEM parts in its insureds' property-damage claims if those parts were cheaper and available.  It also established uniform procedures to implement that policy, while simultaneously denying its claims estimators any discretion to substitute OEM parts for non-OEM parts.  Each class member had received an estimate from State Farm specifying non-OEM replacement parts.  Plaintiffs claimed that the non-OEM parts specified by State Farm were categorically inferior and failed to restore the vehicles to their "pre-loss condition".  The claim was supported with expert testimony, from which it could be reasonably inferred, if accepted as true, that the lot of non-OEM parts specified by State Farm was inferior in terms of appearance, fit, quality, function, durability, and performance.

In regard to the consumer-fraud claim, the record contained evidence that State Farm engaged in an ongoing course of conduct nationwide, in which it specified inferior non-OEM parts whenever those parts were cheaper and available, that State Farm knew those parts were inferior, that State Farm did not inform its policyholders of the problems with those parts, and that State Farm affirmatively misrepresented the condition of those parts by assuring policyholders–on the damage estimates and in brochures–that it specified only "quality replacement parts" and that it guaranteed the parts at no additional cost.

In the certification order, the trial court found that there were factual and legal issues regarding the breach-of-contract and consumer-fraud claims common to all class members, which predominated over other issues.  There was ample support for the court's finding that there were questions of fact regarding the breaches of contract and deceptive claims practices common to the class.  See 
Miner
, 87 Ill. 2d at 19, 428 N.E.2d at 484-85; 
Gordon
, 224 Ill. App. 3d at 200-02, 586 N.E.2d at 465.  The fact that a different conclusion might be arguable does not diminish the deference we must give to decision of the trial court.

State Farm next asserts that it was error to certify a nationwide consumer-fraud class because the claims of non-Illinois class members are governed by varying consumer-fraud laws in 48 states.  We reject this argument for several reasons.  First, the question of whether laws of different states apply to specific transactions alleged in a class action does not ordinarily prevent certification of the class.  
Gordon
, 224 Ill. App. 3d at 202, 586 N.E.2d at 466; 
Purcell
, 175 Ill. App. 3d at 1075, 530 N.E.2d at 998.  Illinois courts have found class actions maintainable in situations where the class includes the residents of other states.  See 
Landesman v. General Motors Corp.
, 42 Ill. App. 3d 363, 356 N.E.2d 105 (1976), 
vacated & rem'd on other grounds
, 72 Ill. 2d 44, 377 N.E.2d 813 (1978); 
Hoover
, 62 Ill. App. 3d at 112, 378 N.E.2d at 768.  The Act does not limit its application to resident consumers.  To deny an out-of-state plaintiff a remedy against a resident of Illinois would violate the legislative directive that the Act be liberally construed to achieve its remedial purposes.  Non-Illinois consumers have been permitted to pursue an action under the Act against a resident defendant where the deceptive acts and practices were perpetrated in Illinois.  See 
Martin v. Heinold Commodities, Inc.
, 117 Ill. 2d 67, 83, 510 N.E.2d 840, 847 (1987).

Second, the circuit court found that there were no true conflicts between the substantive laws of Illinois and those of the other states whose residents were part of the class.  After reviewing those portions of the insurance statutes pertaining to the use of non-OEM parts and the consumer-protection statutes contained in this record, we have concluded that State Farm's deceptive practices were neither specifically authorized nor in compliance with the laws in any of the 48 states.  In addition, the public policy espoused in the laws of our sister states does not conflict with the public policy of Illinois.  Former and current representatives of state insurance commissioners testified that the laws in many of our sister states permit and in some cases encourage the use of non-OEM parts as an effort to encourage competitive price control.  But each witness admitted unequivocally that his respective state would not sanction the use of 
inferior
 aftermarket replacement parts.

State Farm has not identified any state that authorizes an insurer to specify inferior replacement parts.  State Farm has not demonstrated that its conduct is authorized by any other state's laws nor that compliance with the substantive laws of Illinois would lead it to violate a law or regulation imposed by any other state.  We also reject State Farm's argument that the application of the Act to "transactions occurring in other states" violates interstate commerce and the sovereignty of those states.  The resolution of this case under Illinois law does not violate another state's sovereignty, nor is interstate commerce adversely impacted.  The evidence demonstrates that the deceptive claims practices occurred in Illinois.  It was in Illinois that the claims practices were devised and procedures for implementation were prepared for dissemination in other states.  There is no showing that a conflict exists between the laws of Illinois and our sister states regarding the use of inferior aftermarket parts.

Third, Illinois has significant contacts to the claims asserted by each class member.  See 
Phillips Petroleum Co. v. Shutts
, 472 U.S. 797, 821-22, 86 L. Ed. 2d 628, 648, 105 S. Ct. 2965, 2980 (1985).  Plaintiffs' complaint was predicated on identical promises made in standard-form insurance contracts issued to policyholders throughout the country and upon a claims practice that was uniform nationally.  This action was filed against a company chartered and headquartered in Illinois.  There is substantial evidence the deceptive claims practices were designed, established, and initiated from State Farm's corporate headquarters in Bloomington, Illinois, and dictated and disseminated to State Farm employees nationwide.  Illinois has a legitimate interest in applying its law to adjudicate this dispute and to insure that its residents comply with its consumer-protection laws while serving Illinois and out-of-state consumers.  See 
Martin
, 117 Ill. 2d at 82, 510 N.E.2d at 846-47.  State Farm has not demonstrated that Illinois courts would lack jurisdiction to adjudicate or would decline to apply the substantive law of Illinois to a consumer-fraud or contract action filed by an individual out-of-state policyholder on these facts.  In our view, Illinois has sufficient contacts so that the application of its consumer-fraud laws to all class claimants is neither unfair nor a violation of due process.  See 
Martin
, 117 Ill. 2d at 82, 510 N.E.2d at 846-47; 
Gordon
, 224 Ill. App. 3d at 202, 586 N.E.2d at 466. 

State Farm also contends that individualized proofs were necessary to determine which class members had non-OEM parts installed on their vehicles, to determine the quality of the non-OEM parts specified and the preloss condition of class members vehicles, to assert affirmative defenses, and to establish the nature and extent of the damages on each insured vehicle and that these questions predominate over questions common to class members.

In Illinois, a class action is appropriate if common questions predominate over individual questions.  
Steinberg
, 69 Ill. 2d at 338, 371 N.E.2d at 643.  Once this determination has been made, the hypothetical existence of individual defenses and the need for individual proofs on subsidiary questions will not overcome the predominate common question and defeat the class.  
Harrison Sheet Steel Co. v. Lyons
, 15 Ill. 2d 532, 538, 155 N.E.2d 595, 598 (1959).  We are not convinced that individual questions regarding affirmative defenses identified by State Farm amount to anything more than hypothetical questions.  Moreover, a number of these individual questions have been satisfactorily addressed by the trial court or lack evidentiary support in the record.

According to the record, State Farm maintains a central database from which past and present policyholders can be identified and a claims history can be established.  Thus, through its own records State Farm is capable of identifying class members who have had non-OEM parts installed on their vehicles.  The fact that individual determinations as to damages will be necessitated (because some class members may be awarded both specification damages and installation damages while others may be awarded only specification damages) will not defeat the class.  Common issues of State Farm's contractual and statutory violations predominate.  See 
Gordon
, 224 Ill. App. 3d at 202-03, 586 N.E.2d at 466.

The condition of non-OEM parts specified by State Farm was subject to class-wide proofs.  According to plaintiffs' theory, these non-OEM parts were categorically inferior.  Plaintiffs also presented evidence to show that State Farm did not factor a vehicle's preloss condition into the damage assessment process and into the selection and specification of replacement parts.  State Farm notes that it presented evidence of the preloss condition of some of the class representatives' vehicles.  However, State Farm does not point to any evidence in the record to show that the preloss condition was a factor in the damage estimates.  It has not claimed that in specifying repair parts, it sought to duplicate any preloss damage to that vehicle.  State Farm does not contend, for example, that if a fender had a dent prior to an accident, its practice was to require the body shop to dent the replacement part or to specify a dented replacement fender on the estimate.  To the contrary, the unequivocal and singular conclusion that could be drawn from the evidence is that when a property damage claim was made, State Farm did not concern itself with trying to duplicate preloss injury or damage.  Preloss condition played no part in specification of replacement parts on class members' vehicles.  Given this policy of State Farm's indifference to preloss condition when it specified replacement parts, requiring plaintiffs to present proof of preloss condition would have been pointless.  State Farm did not consider this in its claim practice.  The evidence would have been irrelevant.  Only relevant evidence is admissible.  "Relevancy is established where a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable."  
Marut v. Costello
, 34 Ill. 2d 125, 128, 214 N.E.2d 768, 769 (1965).

State Farm has not identified in this record any offer of proof to show that it could establish individual affirmative defenses.  We note that State Farm argued that statutes in a few states required the policyholder to consent to the use of non-OEM parts.  State Farm failed to produce evidence that any policyholder from any of those states had in fact consented to the use of inferior non-OEM parts.  State Farm points out that one of its claims agents testified that one policyholder requested less expensive non-OEM parts.  It failed, however, to present evidence showing that the policyholder had in fact consented with knowledge that the parts were inferior in quality and condition.

Where a complaint is made that the trial court's ruling precluded the presentation of evidence to support a claim or defense, the nature and context of the evidence must be disclosed.  This disclosure through an offer of proof allows the trial and appellate courts to evaluate the proposed evidence and consider its relevance to the matters at issue.  
Holder v. Caselton
, 275 Ill. App. 3d 950, 657 N.E.2d 680 (1995).  Unless the offer of proof is excused because it is apparent from the context, the failure to make an offer of proof precludes raising the issue on appeal.  
Tarshes v. Lake Shore Harley Davidson
, 171 Ill. App. 3d 143, 524 N.E.2d 1136 (1988).  Merely alluding to what might be divulged does not preserve error for appeal.  
People v. Brown
, 104 Ill. App. 3d 1110, 433 N.E.2d 1081 (1982).  The issue is waived.  Nevertheless, to the extent possible based on the record, we have considered the issue.

On this record, there is not sufficient evidence to support the affirmative defenses alleged.  The need for individual proofs on subsidiary issues did not predominate over questions common to the class.  See 
Harrison Sheet Steel Co.
, 15 Ill. 2d at 538, 155 N.E.2d at 598.  In addition, State Farm has not shown that its opportunity to defend any individual issues was impaired or that it suffered great inconvenience by litigating those issues in a single action instead of in separate actions.  
Harrison Sheet Steel Co.
, 15 Ill. 2d at 538, 155 N.E.2d at 598.  Stated simply, the proof at trial did not support State Farm's claim.  The second prerequisite has been met.  

Turning to the third prerequisite, State Farm contends the class representatives do not fairly and adequately protect the interests of the class.  State Farm argues that because it is a mutual insurance company, there is a conflict between class members, in that current policyholders have an interest in keeping damage awards low and in continuing the use of non-OEM parts in order to keep premium costs down, while former policyholders have no such interest.  

The purpose of the adequate-representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim.  
Gordon
, 224 Ill. App. 3d at 203, 586 N.E.2d at 466.  The record does not support State Farm's claim that the interests of some class members are antithetical to the interests of others.  State Farm's actuary testified that any damages awarded would be paid from the company's reserves and would not affect premiums and that the amount awarded would not affect the company's financial viability or its ability to pay dividends or future claims.  Further, there is no evidence that any of the policyholders, past, present, or future, would approve of or encourage State Farm to continue to specify inferior crash parts on repairs of their own cars.  The party representatives and the absent class members share a common interest in establishing the essential elements sought to be litigated on behalf of the class.  On this record, the trial court properly concluded that there was no conflict among class members.  See  
Slimack
, 227 Ill. App. 3d at 299-300, 591 N.E.2d at 78.

There is no doubt that the attorneys representing the plaintiff class are qualified and experienced.  From our review of the record, class counsel appeared to be prepared and well-versed in the facts and the applicable law.  Accordingly, we cannot say that the trial court abused its discretion in finding that the class representatives would adequately protect the interests of the class.

As to the final requirement, State Farm alleges that the trial court erred by focusing on the statutory requirement of efficiency and ignoring the requirement that a class action must be a fair way to adjudicate the controversy.  We disagree with the claim that the trial court ignored this requirement.  The trial court carefully considered whether each party would be able to fairly present its case and whether a class action best served the economies of time, effort, and expense, while promoting uniformity of decision in contract interpretation.  It concluded that these requirements could be and were met.  See 
Steinberg
, 69 Ill. 2d at 339, 371 N.E.2d at 644; 
Gordon
, 224 Ill. App. 3d at 203, 586 N.E.2d at 466.  We find no abuse of discretion.

Based upon even a cursory review of this record, there is little doubt that any individual cases would be defended as vigorously as the case at bar.  The costs of pursing the case on an individual basis would greatly exceed any recovery.  See 
Gordon
, 224 Ill. App. 3d at 203-04, 586 N.E.2d at 467.  Accordingly , we find that the prerequisites of the class action statute have been met and that the circuit court did not abuse its discretion in certifying and in refusing to decertify the class.

B. The Notice

The material in this section was nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

C.  Damages

1.  Direct and Consequential Damages

In its next point, State Farm claims that the trial court erred in accepting improper damages theories, in accepting or rejecting jury instructions regarding plaintiffs' burden of proof, and in admitting baseless opinion testimony.  State Farm alleges that the trial court permitted the plaintiffs to take "short cuts to paper over their inability to present any real class-wide proof" and claims that it committed these errors because of its "desire to preserve the case as a class action".  We will address each point in turn.  Before addressing these issues, we feel obligated to caution counsel that an appeal is not a license to vilify the trial court.  Several comments in this portion of State Farm's brief approach criticism that is inappropriate.  Counsel should be mindful of the obligation to temper advocacy with civility.  See 
Ambrosius v. Katz
, 2 Ill. 2d 173, 179-80, 117 N.E.2d 69, 73 (1954).  We believe that these brief remarks are sufficient.  We will now move on.  

State Farm contends that the specification-damages model is legally flawed because OEM replacement parts were installed in the vehicles of many State Farm policyholders despite the fact that the damage estimates specified non-OEM parts.  State Farm contends that these class members have incurred no actual damages because the body shop installed OEM parts at no additional charge.  State Farm also alleges that class members who sold their vehicles for fair market value subsequent to the installation of non-OEM parts suffered no actual damages.  

Under Illinois law, a contracting party has the right to receive the value of the benefit of his bargain, 
i.e.
, the amount that will compensate him for the loss which a fulfillment of the contract would have prevented or the loss which the breach of contract has entailed.  See 
Lanterman v. Edwards
, 294 Ill. App. 3d 351, 354, 689 N.E.2d 1221, 1224 (1998); 
Illiana Machine & Manufacturing Corp. v. Duro-Chrome Corp.
, 152 Ill. App. 3d 764, 768, 504 N.E.2d 974, 976-77 (1987).  In cases where the breach involved defective performance in the furnishing of goods or services, the measure of damages is the cost of remedying the deficiencies.  
Kalal v. Goldblatt Brothers, Inc.
, 53 Ill. App. 3d 109, 112, 368 N.E.2d 671, 674 (1977). 

In this case, plaintiffs theorized that as a result of the contract breach State Farm policyholders had suffered direct damages ("specification damages"), consequential damages ("installation damages"), or both.  Specification damages were intended to compensate those policyholders who received estimates specifying non-OEM replacement parts.  Specification damages were calculated as the cost difference between the OEM part and the non-OEM part.

There is no question that a class member is entitled to specification damages if an inferior non-OEM part was specified and a class member paid out-of-pocket for an OEM part.  A class member is also entitled to specification damages if an inferior non-OEM part was specified and the body shop provided an OEM part at no additional cost  to the class member.  Why?  Because the class member has not received the benefit of his bargain.  The benefits received from a source wholly independent of and collateral to the breaching party do not diminish damages otherwise recoverable.  See 
American Fidelity Fire Insurance Co. v. General Ry. Signal Co.
, 184 Ill. App. 3d 601, 617, 540 N.E.2d 557, 568 (1989).  The collateral-source rule has been applied in contract law in Illinois in cases where there has been an element of fraud, tort, or wilfulness in breaching the contract.  See 
American Fidelity Fire Insurance Co.
, 184 Ill. App. 3d at 617, 540 N.E.2d at 568; 
GNP Commodities, Inc. v. Walsh Heffernan Co.
, 95 Ill. App. 3d 966, 977, 420 N.E.2d 659, 668 (1981).

In this case there is evidence the breaching party wilfully engaged in deceptive practices that deprived the policyholder of the benefit of his bargain.  State Farm cannot be relieved of its duty to pay damages for breach of contract based upon the gratuitous action of a third party that may have mitigated the damages.  Allowing State Farm to avoid paying damages because an individual body shop installed a quality part rather than the inferior non-OEM part State Farm specified would contravene the collateral-source rule.  It must be remembered that plaintiffs claimed that all non-OEM parts were categorically inferior.  State Farm denied this claim.  Plaintiffs won.  We are compelled to view the evidence in the light most favorable to the verdict winner.  
Quality Granite Construction Co.
, 261 Ill. App. 3d 21, 632 N.E.2d 1139.  Therefore, this group is entitled to specification damages.

The next question is whether class members who received non-OEM parts but subsequently sold their vehicles for fair market value are entitled to specification damages.  Again the answer is yes.  According to plaintiffs' proofs, the damages were not of an ongoing nature; thus, the time to evaluate damages was at the time of the breach.  See generally 
Foster Enterprises, Inc. v. Germania Federal Savings & Loan Ass'n
, 97 Ill. App. 3d 22, 31-32, 421 N.E.2d 1375, 1382 (1981).  State Farm's promise to pay for parts "of like kind and quality" to restore the vehicle to its "pre-loss condition" was breached when it specified and paid for inferior non-OEM parts.  This point is reinforced by the repeated refrain of State Farm's counsel that State Farm "does not fix cars", it merely specifies replacement parts and pays for car repairs.  The fact that a class member sold his vehicle at or below the fair market value months or years later does not negate the fact that he was damaged.

State Farm next contends that the award of installation damages was wholly speculative.  State Farm argues that a class member is eligible to receive installation damages only if a non-OEM part was installed in his vehicle and  he still has the vehicle.  State Farm argues that in the absence of individual proofs there is no competent evidence to show which class members are eligible for installation damages.  It claims that the damage calculations prepared and testified to by plaintiffs' expert were baseless in fact and speculative. 

The amount of damages is ordinarily left to the jury, and its judgment should not be upset unless it appears motivated by passion or prejudice.  
Cannell v. State Farm Fire & Casualty Co.
, 25 Ill. App. 3d 907, 914, 323 N.E.2d 418, 423 (1975).  Damages sought to be recovered must be shown with reasonable certainty as to their nature and extent, but the amount awarded does not have to be proved with mathematical certainty.  
E.J. McKernan Co. v. Gregory
, 252 Ill. App. 3d 514, 541, 623 N.E.2d 981, 1001 (1993).  The law does not require better evidence than can be reasonably obtained (
Cannell
, 25 Ill. App. 3d at 914, 323 N.E.2d at 423), but the party seeking to recover bears the burden of establishing a reasonable basis for the computation of damages.  
E.J. McKernan Co.
, 252 Ill. App. 3d at 541, 623 N.E.2d at 1001.

Class-wide consequential damages, referenced as installation damages, were intended to compensate class members for the labor costs to remove a non-OEM part and to replace it with an OEM part and for a two-day rental car fee for loss of use of the vehicle during the repair process.  Plaintiffs' expert, Dr. Mathur, testified that he used hours-per-job and the labor rates reflected in State Farm's own records and principles of economics to calculate the installation damages that each eligible class member sustained.  In his opinion, each eligible class member sustained approximately $276 in damages as a result of labor costs and loss of use.  Dr. Mathur also testified that he estimated the number of class members eligible for installation damages based, in part, on State Farm's repair records and reinspection studies that it had done.  Dr. Mathur estimated that between 50% and 92% of the damaged vehicles were repaired with non-OEM parts.  He calculated a damages range based upon his estimate of the number of class members who actually received non-OEM parts.  Dr. Mathur testified to aggregate installation damages of $1.2 billion based on 92% eligibility and $658 million based upon a 50% eligibility.  During cross-examination, Dr. Mathur admitted that his high estimate could be off by as much as "a billion dollars".  Apparently, State Farm's cross-examination and argument were not lost on the jury.  It  awarded $212 million in installation damages, approximately $1 billion less than the expert's estimate.

In this issue, State Farm is questioning the validity of the concept of aggregate damages in class action litigation.  State Farm suggests that extrapolation from a representative sample of class members leads to a speculative reflection of total damages.  However, sampling techniques have been found to be an appropriate method for class-wide proof of damages.  See 2 Newberg, Class Actions 350-51 (1985) (citing cases).  In appropriate circumstances, it is considered feasible and reasonable to prove aggregate monetary relief for the class based upon (1) an examination of defendant's records, (2) the use of a common formula or measure of damages multiplied by the number of transactions, units, or class members involved, or (3) a reasonable approximation with proper adherence to recognized evidentiary standards.  See 2 Newberg, Class Actions 348 (1985); 
Long v. Trans World Airlines, Inc
., 761 F. Supp. 1320, 1324 (N.D. Ill. 1991), 
aff'd on other grounds
, 913 F.2d 1262 (7th Cir. 1990).  When determining which method to use, courts must be careful to balance the opposing interests of the parties, and a defendant must be given fair opportunity to contest the validity of individual claims.  See 2 Newberg, Class Actions 348 (1985).

Dr. Mathur's estimate of the number of class members eligible for installation damages was extrapolated from data found in State Farm's own records.  Class-wide awards based upon estimates of the number of affected class members have been approved in the past, and mathematical precision has not been required.  See, 
e.g.
, 
Thomas v. City of Evanston
, 610 F. Supp. 422, 435-36 (N.D. Ill. 1985).  In this case, the trial court has reserved jurisdiction to administer and distribute damages.  Class members entitled to installation damages can be identified through State Farm's data, class response forms, and other methods.  Damages can then be distributed accordingly.  See 
Gordon
, 224 Ill. App. 3d at 204-05, 586 N.E.2d at 467-68.  We trust that the trial court, in consultation with the parties, can devise an acceptable method to manage and distribute the class-wide damages.  Given the amount of the jury's award and the fact that eligible class members can be identified, we see little danger that ineligible class members will receive a share of this award.

Dr. Mathur's calculations of labor costs and rental fees were based upon economic principles and data accepted in the field.  Though his calculations contain some uncertainty, we do not think that his opinions constitute sheer speculation.  
E.J. McKernan Co.
, 252 Ill. App. 3d at 540-41, 623 N.E.2d at 1001; 
Oakleaf of Illinois v. Oakleaf & Associates, Inc.
, 173 Ill. App. 3d 637, 649, 527 N.E.2d 926, 934 (1988).  The jury considered the conflicting expert opinions and the evidence and awarded a sum well below plaintiffs' expert's minimum figure.  There is no evidence that the award was motivated by passion or prejudice.  We do not find the award to be against the manifest weight of the evidence.

2.  Instructional Errors

The material in this section was nonpublishable under Supreme Court Rule 23.

3.  Disgorgement Damages  

The trial court awarded and imposed a constructive trust on $130 million in disgorgement damages on the consumer-fraud claims.  State Farm claims that the court was not authorized to impose a constructive trust, an equitable remedy, because plaintiffs had an adequate remedy at law.  State Farm also argues that the disgorgement damages were duplicative of the specification damages awarded by the jury and must be vacated.

The trial court found that State Farm realized direct savings of $130 million from the specification of inferior crash parts, and the court ordered that sum to be placed in the constructive trust to disgorge State Farm's unjust profits.  According to the evidence, the direct-savings calculation was based upon the difference between the costs of OEM parts and non-OEM parts.  Thus, the disgorgement damages award is duplicative of the specification damages award.  The unjust gain was entirely disgorged through an award in the action at law.  Plaintiffs are entitled to be fully compensated, but there can only be one recovery.  To allow disgorgement damages would amount to double recovery.  See 
Stevens v. B & L Package Liquors, Inc.
, 66 Ill. App. 3d 120, 383 N.E.2d 676 (1978); 
Abbinante v. O'Connell
, 277 Ill. App. 3d 1046, 662 N.E.2d 126 (1996).  We find that the trial court erred in awarding an additional sum of $130 million, and we reverse that portion of the judgment.

4.  Punitive Damages

The material in this section is nonpublishable under Supreme Court Rule 23.

D.  The Judgment Under the Consumer Fraud and Deceptive Business Practices Act

State Farm attacks the consumer-fraud judgment and claims that it should be reversed on the merits.  State Farm contends that the trial court erroneously applied a preponderance-of-the-evidence standard when the correct standard is clear and convincing evidence. 

Both parties correctly note that no standard of proof is set forth in the Act and that the Illinois Supreme Court has not yet considered this issue.  However, our colleagues in the First and Third Districts have reviewed this issue.  
Cuculich v. Thomson Consumer Electronics, Inc.
, 317 Ill. App. 3d 709, 717-18, 739 N.E.2d 934, 939-40 (2000)
; 
Malooley v. Alice
, 251 Ill. App. 3d 51, 56, 621 N.E.2d 265, 268-69 (1993).  They have concluded that the appropriate standard of proof  is a preponderance-of-the-evidence standard.  The legislature has directed that the Act be construed liberally to effect its remedial purposes.  
Cuculich
, 317 Ill. App. 3d at 717-18, 739 N.E.2d at 939-40; 
Malooley
, 251 Ill. App. 3d at 56, 621 N.E.2d at 268-69.  The Act was intended to afford a broader range of protection than the common law (
Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33, 68, 643 N.E.2d 734, 751 (1994)) and to curb fraudulent abuses, while eradicating deceptive and unfair business practices.  
Malooley
, 251 Ill. App. 3d at 56, 621 N.E.2d at 268.  The elements necessary to establish fraud under the Act are less stringent than elements necessary to establish common law fraud.  
Eshaghi v. Hanley Dawson Cadillac Co.
, 214 Ill. App. 3d 995, 1001-02, 574 N.E.2d 760, 764 (1991).  The liberal construction accorded the Act, coupled with the absence of a statutorily imposed clear-and-convincing-evidence standard, persuades us that the preponderance-of-the-evidence standard is appropriate.  We, therefore, join our colleagues in so holding.  

Accordingly, the award of disgorgement damages is reversed.  In all other respects, the judgment of the circuit court is affirmed, and the cause is remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

WELCH, THOMAS M., and WELCH, ROBERT L.
(footnote: 1), JJ., concur.

FOOTNOTES
1:
Chief Judge of the Eighth Judicial Circuit, sitting by assignment.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 04/05/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.